MARK D. ROSENBAUM, SBN 59940
PETER J. ELIASBERG, SBN 189110
PETER BIBRING, SBN 223981
ACLU FOUNDATION OF
    SOUTHERN CALIFORNIA
1616 Beverly Blvd.
Los Angeles, CA 90026-9938
Tel.: (213) 977-9500
Fax: (213) 250-3919

CAROL A. SOBEL, SBN 84483
LAW OFFICES OF CAROL A. SOBEL
429 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401-3439
Tel.: (310) 393-3055
Fax: (310) 393-3605

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DONALD FITZGERALD et al.,

        Plaintiffs,

        vs.

CITY OF LOS ANGELES et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: CV 03-01876-DDP (SSx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS FEES**

The Honorable Dean D. Pregerson

Date:   April 6, 2009
Time:  10:00 a.m.
Place:  Courtroom 3

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BRIEF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   Plaintiffs Are Entitled to Reasonable Attorneys Fees For Time Spent on the Motion to Extend the Injunction Because they Obtained an Enforceable Court Order that Altered the Relationship Among the Parties and Because the Time Spent on the Motion to Extend the Injunction Was Compensable Post- Judgment Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.   Plaintiffs Are Also Entitled to Reasonable Attorneys Fees for Time Spent Between the Extension of the Injunction and the Entry of the Enforceable Settlement Agreement on February 17, 2009 **Under Both Federal and State Law** . . . . . . . 3

   1.   Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   2.   State Law   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      a.   The Settlement Agreement Establishes that Plaintiffs are Prevailing Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      b.   The Settlement Agreement Need Not Address the Issue of Fees to Preserve Plaintiffs' Entitlement to Fees and Costs . . . . . . . . . . . . . 7

      c.   This Action Resulted in Enforcement of An Important Right Affecting the Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      d.   The Settlement Conferred a Significant Benefit on a Large Class of Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      e.   The Necessity and Financial Burden of Private Enforcement Make the Award of Fees Appropriate in This Case . . . . . . . . . . . . . . . . . . . . 8

C.   **Plaintiffs Have Not Waived Their Claim to Attorneys Fees For Time Spent After the Entry of the Original Settlement Agreement** . . . . . . . . . . . . . . . . . . . 8

D.   The Amount of Fees Plaintiffs Seek is Reasonable . . . . . . . . . . . . . . . . . . . . . . . 10

   1.   Plaintiffs' Counsel Has Exercised Appropriate Billing Judgment . . . . . . 10

   2.   The Hourly Rate Sought For Each Attorney is Reasonable . . . . . . . . . . . 12

E.   Plaintiffs Are Entitled to Their Reasonable Out-Of-Pocket Expenses . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**FEDERAL CASES** Page(s)

*Barrios v. California Interscholastic Federation,*
277 F.3d 1128 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Blum v. Stenson,*
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) . . . . . . . . . . . . . . . 10, 12

*Buckhannon Board & Care Home v. West Virginia Department of
Health & Human Resources,* 532 U.S. 598, 121 S. Ct. 1835,
149 L. Ed. 2d 855 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Clark v. City of Los Angeles,*
803 F.2d 987 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*D'Emanuele v. Montgomery Ward & Co.,*
904 F.2d 1379 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dang v. Cross,*
422 F.3d 800 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Davis v. City and County of San Francisco,*
976 F.2d 1536 (9th Cir. 1992), *vacated in part as to
expert fees,* 984 F.2d 345 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Domingo v. New England Fish Co.,*
727  F.2d 1429 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Farrar v. Hobby,*
506 U.S. 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fischer v. SJB-P.D. Inc.,*
214 F.3d 1115 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gusman v. Unisys Corp.,*
986 F.2d 1146 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hasbrouck v. Texaco,*
879 F.2d, 632 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hensley v, Eckerhart,*
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) . . . . . . . . . . . . . . . . . . . 10

*International Woodworkers of America, AFL-CIO, Local 3-98 v. Donovan,*
792 F.2d 762 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Keith v. Volpe,*
833 F.2d , 850 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Muckleshoot Tribe v. Puget Sound Power & Light Co.*,
   875 F.2d 695 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*N.A.A.C.P. v. San Francisco Unified Sch. District*,
   284 F.3d 1163 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Perkins v. Mobile Housing Board*,
   847 F.2d 735 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Skaff v. Meridien North America Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Texas State Teachers Association v. Garland Independent School District*,
   489 U.S. 782, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989) . . . . . . . . . . . . . . . . . . 3

*Zucker v. Occidental Petroleum Corp.*,
   968 F. Supp. 1396 (C.D.Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATE CASES**

*Adoption of Joshua S.*,
   42 Cal. 4th 945 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Beasley v. Wells Fargo Bank*,
   235 Cal. App. 3d 1407 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

*Fletcher v. A.J. Industries, Inc.*,
   266 Cal. App. 2d 313 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Folsom v. Butte County Association of Governments*,
   32 Cal. 3d 668 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Graham v. Daimler-Chrysler Corp.*,
   34 Cal. 4th 553 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Lyons v. Chinese Hospital Association*,
   136 Cal. App. 4th 1331 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Maria P. v. Riles*,
   43 Cal. 3d 1281 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Olson v. Automobile Club of So. Calif*,
   42 Cal. 4th 1142 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Planned Parenthood v. Aakhus*,
   14 Cal. App. 4th 162 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Press v. Lucky Stores, Inc.*,
   34 Cal. 3d 311 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Santisas v. Goodin*,
   17 Cal. 4th 599 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Serrano v. Unruh (Serrano IV)*,
   32 Cal. 3d 621 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES**

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**MISCELLANEOUS**

Pearl, *California Attorney Fee Awards,*
    Cont. Ed. Bar 2d ed. (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**INTRODUCTION**

For the reasons set forth below, Plaintiffs are entitled to attorneys fees for prevailing on the motion to extend the injunction, which the Court granted on April 23, 2007,  and for time spent negotiating the court ordered settlement agreement entered on February 17, 2009.  The declarations and accompanying exhibits establish that the hours expended and the rates sought are reasonable.

**BRIEF PROCEDURAL HISTORY**

Plaintiffs, who are persons living in the area of Los Angeles commonly known as "Skid Row," filed this action under 42 U.S.C. § 1983 in order to prohibit the Los Angeles Police Department from a policy and practice of stops and searches that violated their rights under the Fourth Amendment and California law.  Plaintiffs initially obtained their goals through entry of a temporary restraining order and preliminary injunction that prohibited a variety of practices that violated the Fourth Amendment and subsequently through a settlement agreement that provided for a stipulated permanent injunction. That settlement also provided for the payment of attorneys fees to Plaintiffs' counsel.

In late 2006, Plaintiffs became aware that Defendants were no longer abiding by the terms of the injunction.  Accordingly, Plaintiffs moved this Court for an order extending the injunction, which was set to expire in 2007.  After reviewing the briefing and evidence submitted by the parties, and hearing oral argument, this Court found in its April 23, 2007 Order that Defendants had "admitted to an unconstitutional policy and that Plaintiffs ha[d] established that some violations of the injunction have occurred and are likely still occurring."  Order at p. 32.  As a result, the Court granted Plaintiffs' motion and extended the injunction for 120 days to allow "the LAPD ample time to review its policies and practices to ensure that they comply with current Fourth Amendment law as outlined." *Id.*

Defendants filed a motion to vacate the injunction on July 11, 2007, which was noticed for hearing on August 6, 2007  about two weeks before the 120 day extension was to expire.  Plaintiffs opposed the motion on the grounds that Defendants were still

not abiding by the terms of the injunction and had not satisfied the legal standard for vacating an injunction.

On August 20, 2007, Plaintiffs filed a second motion to extend the injunction, alleging that  Defendants were continuing to violate the terms of the extended injunction.  The Court did not hear or decide either motion.  Instead, the parties initiated settlement negotiations with the Court's assistance, which eventually resulted in the parties' reaching a settlement agreement.  On February 17, 2009, the Court signed the agreement, which provides, among other things, that 1) searches incident to arrest are not permissible when a person is cited in the field for an infraction or misdemeanor and released; 2) the police may not compel persons to answer whether they are on probation or parole; 3) that the time for a warrant check of a person stopped by the police may not exceed the time reasonably required for an officer to complete his or her other investigative duties.

## ARGUMENT

**A.**    **Plaintiffs Are Entitled to Reasonable Attorneys Fees For Time Spent on the Motion to Extend the Injunction Because they Obtained an Enforceable Court Order that Altered the Relationship Among the Parties and Because the Time Spent on the Motion to Extend the Injunction Was Compensable Post- Judgment Work**

Plaintiffs are entitled to reasonable attorneys fees for time spent on their motion to extend the injunction, which this Court granted on April 23, 2007.[1]  When, as in this

---

[1] After the Court granted the motion to extend the injunction, Plaintiffs filed an ex parte application for leave to file  a motion for attorneys fees a day short of Local Rule 7-3's notice requirement.   Defendants opposed the ex parte application on numerous grounds, including that Plaintiffs had failed to comply with Local Rule 7-3 and that in the original settlement agreement Plaintiffs had waived any entitlement to fees for post-settlement work.  In their reply, Plaintiffs made clear that they had filed their motion in an abundance of caution in case Local Rule 54-12, which requires that attorneys fees motions be filed within 14 days "after the entry of judgment or other final order," applied to the Court's April 23, Order extending the injunction.  Plaintiffs argued in their reply that Local Rule 54-12 did not apply because the order extending the injunction was not a "final judgment or other final order."  Plaintiffs further explained that if the Court

case, Plaintiffs obtain injunctive relief that alters the legal relationship between or among the parties, they are entitled to fees as "prevailing parties" under 42 U.S.C. § 1988. *See, e.g., Buckhannon Bd. & Care Home v. West Virginia Dept. of Health & Human Resources,* 532 U.S. 598, 603-04, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (entry of judgment on the merits or settlement agreements providing for court ordered relief entitles plaintiff to award of attorneys fees because they are "court-ordered 'changes][in] the legal relationship between [the plaintiff] and the defendant.'" ) (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L.Ed.2d 866 (1989)).  Just like an initial order granting a permanent injunction, the order extending the injunction altered the relationship between the parties, and therefore entitles Plaintiffs to an award of reasonable fees under section 1988. *See id.*

Plaintiffs are also entitled to fees for time spent on the motion to extend the injunction under the Ninth Circuit's case law holding that certain post-judgment work entitles plaintiffs to fees.  As the Ninth Circuit has stated, "[i]t is settled law in this circuit that a district court has discretion to award fees to a prevailing party in consent decree litigation for work reasonably spent to monitor and enforce compliance with the decree, even as to matters in which it did not prevail." *N.A.A.C.P. v. San Francisco Unified Sch. Dist.,* 284 F.3d 1163, 1166 (9th Cir. 2002)(citing *Keith v. Volpe,* 833 F.2d , 850, 855-57 (9th Cir.1987)).  The time spent on the motion furthered the purpose of the original decree and helped enforce compliance with the original injunction in the case.

**B.    Plaintiffs Are Also Entitled to Reasonable Attorneys Fees for Time Spent Between the Extension of the Injunction and the Entry of the Enforceable Settlement Agreement on February 17, 2009  Under Both Federal and State Law**

    1.    Federal Law

_____

concluded that Local Rule 54-12 did not apply, that they were requesting that the Court deny the ex parte application  as moot. In its ruling, the Court held that Local Rule 54-12 did not apply and that the ex parte application was therefore moot.  Accordingly, Plaintiffs have waited for a final resolution of the matter to file their motion for attorneys fees.

1    Plaintiffs are also entitled to reasonable attorneys fees under federal law for work

2    done between the Court's order extending the injunction and the entry of the judicially

3    enforceable settlement agreement on February 17, 2009, for two reasons.

4    First, as explained above, prevailing parties are entitled to fees for post-judgment

5    work "reasonably spent to monitor and enforce compliance with the decree, even as to

6    matters in which it did not prevail." *N.A.A.C.P. v. San Francisco Unified Sch. Dist.,* 284

7    F.3d 1163, 1166 (9th Cir. 2002)(citing *Keith v. Volpe,* 833 F.2d , 850, 855-57 (9th

8    Cir.1987)).  The February 17, 2009 settlement agreement will help ensure compliance

9    with the original stipulated injunction both by providing specific rules governing the

10   Fourth Amendment's application to situations, such as the permissibility of searches

11   incident to field arrests where an individual is stopped, cited and released for a suspected

12   violation of LAMC § 41.18(d), (*see* paragraphs 6-8) and by providing for a means to

13   have the Court enforce the terms of the agreement in the event Plaintiffs demonstrate that

14   the Defendants are not complying with its terms.  *See* paragraphs 24-25.

15   Second, it is well-settled law in the Ninth Circuit that a plaintiff who enters into a

16   judicially enforceable settlement agreement is entitled to attorneys fees.  For example,

17   the Ninth Circuit ruled in *Barrios v. California Interscholastic Federation*, 277 F.3d

18   1128 (9th Cir. 2002), that a plaintiff who obtains relief through a legally enforceable

19   settlement agreement is the prevailing party entitled to fees and expenses.  In its ruling,

20   the Ninth Circuit in *Barrios* quoted from a prior Ninth Circuit decision holding that a

21   plaintiff who obtains relief through a settlement agreement is the prevailing party, which

22   in turn quoted from a prior Supreme Court decision:

23   Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters

24   into a legally enforceable settlement agreement against the defendant:

25   "[A] plaintiff 'prevails' when actual relief on the merits of his claim

26   materially alters the legal relationship between the parties by modifying the

27   defendant's behavior in a way that directly benefits the plaintiff."  The

28   Court explained that a "material alteration of the legal relationship occurs

[when] the plaintiff becomes entitled to enforce a judgment, consent decree, *or settlement* against the defendant." In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113). *Barrios*, 277 F.3d at 1134 (brackets by the Ninth Circuit) (emphasis added).

    2.  <u>State Law</u>

Plaintiffs are entitled to "private attorney general" fees under California Code of Civil Procedure section 1021.5 because the complaint in this matter had a claim under California Civil Code Section 52.1. CCP §1021.5 codified the public policy of this state to ensure fee compensation as an inducement for lawyers to act as "private attorneys general" and take on public interest litigation that might otherwise be too costly to pursue. *Graham v. Daimler-Chrysler Corp.*, 34 Cal.4th 553, 569 (2006), citing *Serrano v. Unruh* (*Serrano IV*), 32 Cal.3d 621, 624 n.1 (1982). Under CCP §1021.5, courts apply a multi-prong test to assess whether a party should be awarded attorney fees. The party seeking fees must be a "successful" or "prevailing" party. A party will be deemed "prevailing" if the action resulted "in the enforcement of an important right affecting the public interest," by showing that, as a result of the action, "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . , are such as to make the award appropriate, and (c) fees should not in the interest of justice be paid out of the recovery, if any." *Adoption of Joshua S.*, 42 Cal.4th 945, 952, n.2 (2008), quoting CCP § 1021.5.

"'Although [§] 1021.5 is phrased in permissive terms (the court 'may' award), the discretion to deny fees to a party that meets its terms is quite limited. The [California] supreme court in *Serrano v. Unruh (Serrano IV)*, 32 Cal. 3d 621, 633 (1982) . . ., noted that the private attorney general theory, from which 1021.5 derives, requires a full fee

1    award, 'unless special circumstances would render such an award unjust.' Pearl, Cal.

2    Attorney Fee Awards (Cont. Ed. Bar 2d ed. 2005) §4.42, p.132." *Lyons v. Chinese*

3    *Hospital Association*, 136 Cal. App.4th 1331, 1344 (2006) (brackets in *Lyons*). No

4    special circumstances exist to justify denying the fee award here.

        a.   <u>The Settlement Agreement Establishes that Plaintiffs are Prevailing Parties</u>

6    To effectuate the public policy expressed in §1021.5, California courts "have

7    taken a broad, pragmatic view of what constitutes a 'successful' party." *Graham.* 34

8    Cal.4th at 565.  A 'successful' party means a 'prevailing' party. *Id.* at 570.  "[P]laintiffs

9    may be considered "prevailing parties" for attorney's fees purposes if they succeed on

10   any significant issue in litigation which achieves some of the benefit the parties sought in

11   bringing suit." *Maria P. v. Riles*, 43 Cal.3d 1281, 1292 (1987).

12   In this instance, Plaintiffs secured in the February 17, 2009 settlement agreement

13   similar, but more detailed, protections against Fourth Amendment violations on Skid

14   Row to the ones they had achieved through the original settlement agreement and

15   stipulated injunction.  That stipulated injunction would have expired on or about August

16   22, 2007, and its protections disappeared absent Plaintiffs' efforts both to obtain an

17   additional extension and then to reach the February 17, 2009 settlement.   Thus, plaintiffs

18   achieved through the settlement substantially what they sought by this litigation.

19   It is axiomatic that relief secured through a settlement agreement qualifies

20   plaintiffs as prevailing parties under CCP § 1021.5, even if the agreement includes a

21   disclaimer of liability on the merits.  *Lyons*, 136 Cal. App. 4th at 1345, citing *Santisas v.*

22   *Goodin*, 17 Cal.4th 599, 621-22 (1998), *Folsom v. Butte County Assn of Governments*,

23   32 Cal.3d 668, 671 (1982),[2] and *Planned Parenthood v. Aakhus*, 14 Cal.App.4th 162,

---

[2] In *Folsom*, the plaintiffs agreed to dismiss their case as part of the settlement agreement, as is also the case here. 32 Cal.3d at 669.

174 (1993).[3]  The California Supreme Court recently reaffirmed this principle in *Graham*, 34 Cal.4th at 566, citing *Fletcher v. A.J. Industries, Inc.*, 266 Cal.App.2d 313, 325 (1968) ("plaintiffs were successful in conferring a substantial benefit . . . , even though the litigation 'was resolved through a settlement'").

In settled cases, "courts presume that a party who formally, through settlement, agrees to afford another party relief does so because of the lawsuit." Pearl, *supra*, §2.23A, p.66.2.  Thus, the settlement agreement entered into by the parties in this action establishes that plaintiffs are the successful parties.

> b.   The Settlement Agreement Need Not Address the Issue of Fees to Preserve Plaintiffs' Entitlement to Fees and Costs

The settlement agreement executed by the parties in this action provides that the parties disagree about Plaintiffs' entitlement to fees and will resolve the issue through a motion.  See paragraph 21.  Under state law, fees may be awarded after a settlement agreement is reached "unless expressly or by necessary implication excluded by the [settlement]." *Folsom*, 32 Cal.3d at 678.  In this instance, fees were neither expressly nor by "necessary implication" excluded by the settlement signed by the parties.

> c.   This Action Resulted in Enforcement of An Important Right Affecting the Public Interest

The settlement provides clear direction to the LAPD and the parties generally as to what kinds of stops and searches are permissible under the Fourth Amendment, thereby ensuring that the Fourth Amendment rights of the inhabitants of Skid Row are protected.[4]  The California Supreme Court has held that "the determination that the public policy vindicated is one of constitutional stature" satisfies the requirement under CCP 1021.5 that "the action result in the enforcement of an important right affecting the

---

[3] *See also Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007), citing *Lyons*, 136 Cal. App. 4th at 1345.

[4] As noted previously, plaintiffs also filed suit under the analogous provisions of the California Constitution, Article I, sec. 7 and 17.

public interest." *Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 318 (1983).

> d.   The Settlement Conferred a Significant Benefit on a Large Class of Persons

The settlement agreement conferred a significant benefit on a large class of persons in the City of Los Angeles.  Pursuant to the settlement, the City agreed to abide by a specific set of practices that protect the Fourth Amendment rights of those on Skid Row, thereby benefitting the large class of about 13,000 persons who live, work or visit in the area.

In *Press*, the Court rejected the argument by the defendant that there was no benefit to a significant class of persons since the injunction was brought by only a handful of petition signature gatherers at a single grocery store.  The *Press* Court held that the benefit was not limited to the small number of individuals who sought to gather signatures but, rather, that enforcement of constitutional rights necessarily inures to the public as a whole.  *Press*, 34 Cal.3d at 318.

> e.   The Necessity and Financial Burden of Private Enforcement Make the Award of Fees Appropriate in This Case

Finally, the necessity and financial burden of private enforcement makes an award of attorneys' fees to plaintiffs appropriate.  The relevant inquiry is whether the litigant's personal stake in the litigation exceeds its cost by a substantial margin.  *See Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407, 1416-1417 (1992).  Here, plaintiffs are homeless and low-income individuals who could not, on their own, afford to hire attorneys and pay costs in this case.  Moreover, as they neither sought nor will receive monetary damages in this case, plaintiffs have no financial interest in the relief they have achieved.  Plaintiffs satisfy each element of the requirement for an award of fees under California law based on the settlement agreement entered into in this case.

**C.   Plaintiffs Have Not Waived Their Claim to Attorneys Fees For Time Spent After the Entry of the Original Settlement Agreement**

Plaintiffs expect that Defendants will contend that Plaintiffs waived entitlement to post-judgment fees through Paragraphs IV and V of the original settlement agreement,

entitled "Attorney's Fees and Costs" and "Release of Defendants" respectively.  That contention is incorrect.

The burden is on Defendants to show that the Plaintiffs clearly waived attorneys' fees as part of the settlement.  *See Muckleshoot Tribe v. Puget Sound Power & Light Co.* 875 F.2d 695, 697-98 (9th Cir. 1989).  If Defendants fail to meet that burden, the settlement agreement will not be deemed to waive fees.  *Id.*  Examination of the provisions in the agreement that Defendants will likely rely on show that Defendants cannot possibly satisfy their burden that Plaintiffs waived all claims to potential, future, post judgment fees.  Paragraph IV provides for the payment of $75,000 in damages to plaintiffs and "$94,720" for "plaintiffs' attorneys fees and cost [sic]."  The next sentence states: "Plaintiffs accept this amount as full payment for any and all monetary amounts *owed* in connection with Case Number CV03-1876, and on behalf of themselves, hereby release all defendants, as well as all other employees and entities of the City of Los Angeles, from any further obligations to pay any further amounts."  *Id.* (emphasis added).

A release for monies "owed" does not waive claims for some unknown, potential *future* liability, which is what the attorneys fees claim here constitutes.  It could not do so since the use of the past tense of the verb "to owe" makes clear that the Plaintiffs were only releasing claims that had already accrued, not speculative, potential future claims.

Similarly, the release of defendants in Paragraph V "from any and all obligations and liabilities in connection with the injunctive relief claims in case number CV-03-1876 and the allegations made therein" is most logically interpreted as releasing Defendants from any claim for equitable relief beyond what is included in the settlement based on the allegations in the complaint.  If it were read as a waiver of additional claims for damages and attorneys fees, it would render Paragraph IV redundant.  In any event, the provision does not *clearly* waive all future claims for attorneys fees based on either then-unknown future violations of the agreement that provided the "good cause" to extend the injunction, or a claim for fees for post-judgment work under *Keith v.Volpe*.

1    Accordingly, Defendants cannot satisfy their burden of demonstrating waiver. *See*

2    *Muckleshoot,* 875 F.2d at 697-98.

3    **D.    The Amount of Fees Plaintiffs Seek is Reasonable**

4        In order to determine what constitutes a reasonable award, the Supreme Court has

5    held that "[t]he most useful starting point for determining the amount of a reasonable fee

6    is the number of hours reasonably expended on the litigation multiplied by a reasonable

7    hourly rate." *Hensley v, Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40

8    (1983). This calculation, known as the lodestar amount, is "presumed to be the

9    reasonable fee." *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed. 2d 891

10   (1984).

11       The attached declarations and exhibits demonstrate that the number of hours for

12   which plaintiffs seek an award of fees is reasonable. They also demonstrate Plaintiff's'

13   counsel are requesting reasonable hourly rates. Accordingly, Plaintiffs have calculated a

14   figure that is presumed to be reasonable.

15       1.    Plaintiffs' Counsel Has Exercised Appropriate Billing Judgment

16       The number of attorney hours for which plaintiffs seek an award of fees is

17   reasonable. Plaintiff seeks compensation for the work of attorneys Mark Rosenbaum,

18   Carol Sobel, Anne Richardson, Peter Bibring, Peter Eliasberg, and Sanjukta Paul; the

19   work of legal assistant Joyce Bradberg; and the work of Teresa Virgen-Torres and law

20   students who helped gather the more than 40 declarations from persons living in or

21   visiting the Skid Row area that were submitted with the two motions to extend the

22   injunction and in opposition to defendants' motion to vacate the injunction. Plaintiffs

23   have submitted declarations from attorneys at each of the firms representing plaintiffs –

24   the ACLU, the law office of Carol Sobel, and Hadsell Stormer Keeny Richardson &

25   Renick (HSKRR). Those declarations set forth their firms' billing practices and attest to

26   their time records.

27       Plaintiffs' counsel took care to ensure that there were no inefficiencies or duplication

28   of effort involved and the record supports such a finding. Plaintiffs' attorneys have

reviewed their hours and exercised billing judgment by eliminating from the requested fees any hours that were not reasonable and necessary.  For example, Plaintiffs are seeking compensation for only 1/3 of the hours Mr. Bibring spent preparing for oral argument on the motion to extend the injunction, even though the argument ended up being important to this Court's decision to grant Plaintiffs' motion. Eliasberg Dec1. ¶ 10.  Although four different lawyers did significant work on different portions of the Plaintiffs' evidence and/or the briefing in support of the motion, and all of them attended the argument, Plaintiffs are not seeking compensation for all their time attending the argument. The ACLU has also chosen not to seek compensation for any of the more than 29 hours spent on the matter by two first-year associates.  *Id.*  Nor are they seeking compensation for Melinda Bird, a senior lawyer, who participated only in the initial stages of preparing the motion or anyone else – lawyer, law student, or paralegal, who billed less than 10 hours on this matter.  *Id.*  In sum, the ACLU is not seeking compensation for more than 72 hours spent in preparation of the motion to extend the injunction, and an additional 50 hours approximately during the period between the extension of the injunction and the entry of the settlement agreement. *Id.* In sum, the ACLU is not seeking compensation for  about 19% of the hours its lawyers, law students, and paralegals worked on this matter.  Eliasberg Decl. ¶¶ 14-15 & Exh 1.

Similarly, Ms. Sobel has reduced the time spent by a first-year associate briefing the second motion to extend and preparing evidentiary objections to Defendants' declarations, and has also eliminated time spent by several law students in researching various issues for briefing and settlement discussions.  Sobel Decl. ¶ 9.  The total hours eliminated by Ms. Sobel is about 44 hours.  *Id.*

In addition, Ms. Richardson of HSKRR is not billing for the initial conference of counsel at which counsel were considering what steps to take in response to recent reports of improper searches on Skid Row.  Richardson Dec1. ¶23.  Nor is she billing for any time spent on preparing her declaration in support of this fee motion, even though such time is clearly compensable.  *Id.* at ¶ 23; *see Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir. 1986)("[T]ime spent in establishing entitlement to an amount of fees awardable under

section 1988 is compensable."). Finally, the firm is not seeking compensation for any of the time spent on this matter by persons at her firm, including paralegals, who billed fewer than ten hours on the matter.   Richardson Decl. ¶ 23.   In total, HSKRR is not seeking compensation for almost $5,000 worth of time, or about 8% of the firm's total billing. Id. at ¶ 23.

Plaintiffs are also not seeking compensation for any lawyer, paralegal or law student who billed less than ten hours on this matter.  Plaintiffs taken the total after the exercise of billing judgment and reduced it by an additional 5% to ensure that no excessive or duplicative time is being sought.  Finally, all counsel, paralegals, and law students who seek compensation in this matter billed in tenth of an hour increments, a billing practice that has been explicitly approved of in this district. *Zucker v. Occidental Petroleum Corp.,* 968 F.Supp. 1396, 1403 & n.11 (C.D.Cal. 1997).  In sum, Plaintiffs have eliminated far more hours than are required under the Ninth Circuit standard that a prevailing plaintiff is "entitled to recover a reasonable fee for every item of service, which at the time rendered would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Hasbrouck v. Texaco,* 879 F.2d, 632, 638 (9th Cir. 1989).

The declarations constitute sworn evidence that Plaintiffs' attorneys actually expended the time for which compensation is sought. "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case. . . " *Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1988). To deny compensation, "it must appear that the time claimed is *obviously and convincingly excessive under the circumstances." Id.* (emphasis added).

## 2.   The Hourly Rate Sought For Each Attorney is Reasonable

In *Blum v. Stenson,* the Supreme Court explained that "reasonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community." 465 U.S. 886, 895 & n.11. In so doing, the Court explicitly rejected the argument that attorneys working for a non-profit legal organization or on a *pro bono* basis should be paid less than the prevailing market rate. *Id.* at 895-96; *see also Domingo v. New England Fish Co.,* 727

F.2d 1429, 1447 (9th Cir. 1984) ("[R]epresentation by a public interest group should be compensated at the same rate charged by comparable private counsel."). In determining the prevailing market rate, the Court should pay "close attention" to "the fees charged by 'lawyers of reasonably comparable skill, experience, and reputation.'" *Davis,* 976 F.2d at 1545-46 (quoting *Blum,* 465 U.S. at 895).

Plaintiffs are also seeking compensation for the time spent preparing this application for fees.[5] It is well-established law that a plaintiff is entitled to an award of fees for time reasonably spent in litigating the attorney's fees application if plaintiff does receive a fee award. *E.g.*, *D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1387-88 (9th Cir. 1990), *Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir. 1986)("time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."). They will submit with their reply brief, revised totals that include time spent on both finalizing this motion and on the reply brief.

The following chart shows the hours for which fees are being sought both for time spent on the motion to extend the injunction as well as time spent between the Court's April 23, 2007 order extending the injunction and today, the rate being sought, and, for each lawyer, the year of law school graduation. The rates being sought are reasonable, as is demonstrated by both previous fees awards and evidence of the prevailing market rates for lawyers and paralegals with similar skill and experience, as is set forth in the declarations of Peter Eliasberg, Barrett S. Litt, Anne Richardson, Carol Sobel, and Karen R. Thorland.

---

[5] Plaintiffs are seeking compensation for 50% of their time on their opening brief on their first motion for fees because that work enabled them to prepare this fee motion much more quickly than if they had started from scratch. At this time, they are seeking no compensation for the work they did in support of their reply on that first fee application.

<u>Law Office of Carol Sobel</u>

| Name | Year of Law School Graduation | Rate | Hours for Which Fees are Sought | Lodestar |
|------|------|------|------|------|
| Carol Sobel | 1978 | $710[6] | 152.6 | $108,346 |
| | | | **Lodestar After 5% Reduction** | **$102,928.70** |

<u>ACLU of Southern California</u>

| Name | Year of Law School Graduation | Rate | Hours | Total |
|------|------|------|------|------|
| Mark Rosenbaum | 1974 | $740[7] | 40.10 | $29,674 |
| Peter Eliasberg | 1994 | $525[8] | 79.50 | $41,737.50 |

---

[6] For evidence of the reasonableness of this rate, see Sobel Decl. ¶ 4-8; Declaration of Barrett S. Litt ¶¶ 14; 20; 22-24; Declaration of Anne Richardson ¶ 5 (current billing rate for Barbara Hadsell, 1978 law graduate, is $725 per hour); Thorland Decl. ¶ 5 (attorney at Loeb & Loeb in Los Angeles ("Loeb") who graduated from law school in 1974 would be billed at a rate of $750 to $775 per hour).

[7] For evidence of the reasonableness of this rate, see Richardson Declaration ¶ 5 (customary billing rate for Dan Stormer,1976 law graduate, is $800 per hour); Thorland Decl. ¶ 5 (attorney at Loeb who graduated from law school in 1974 would be billed at a rate of $750 to $775 per hour); Litt Decl. ¶¶ 14, 20, 22-24.

[8] For evidence of the reasonableness of this rate, see Richardson Decl. ¶ 5 (customary billing rate for Randy Renick, a 1995 law school graduate is $550 per hour); Thorland Decl. ¶ 8 (attorney at Loeb who graduated from law school in 1994 would be billed at a rate of $550 to $575 per hour); Litt Decl. ¶¶ 14; 21; 22-24 (in 2005 Skadden Arps billed $530 per hour for attorney 10 years out of law school); Declaration of Peter Eliasberg Decl. ¶ 16 (In 2008, Ninth Circuit grants request for fees at a rate of $490 per hour to Mr. Eliasberg).

| Peter Bibring | 2002 | $375[9] | 345.10 | $129,412 |
| Neda Rastegar | 2007 | $240[10] | 18.80 | $ 4,512 |
| Law students | n/a | $200[11] | 41.50 | $ 8,300 |
| Joyce Bradberg | n/a | $175[12] | 16.40 | $ 2,870 |
| Teresa Virgen-Torres | n/a | $175[13] | 21.30 | $ 3,727.50 |
| | | | **Total** | $220,233.50 |

---

[9] For evidence of the reasonableness of this rate, see Thorland Decl. ¶ 9 (attorney at Loeb who graduated from law school in 2002 would be billed at a rate of $450 to $475 per hour); Eliasberg Decl. ¶ 16 (In 2008, Ninth Circuit holds that rate of $350 per hour for Mr. Bibring was reasonable); Litt Decl. ¶21, 23-24 (in 2007, Dewey & LeBoeuf charged $395 for a 2005 law school graduate and Kirkland & Ellis billed $485 for a 2000 law school graduate).

[10] For evidence of the reasonableness of this rate, see Thorland Decl. ¶ 11 (attorney at Loeb who just graduated from law school and has not yet passed the bar would be billed at a rate of $285 per hour)

[11] For evidence of the reasonableness of this rate, see Thorland Decl. ¶ 13 (Law student interns at Loeb billed at $285 per hour, a rate that is "comparable with the rates charged by other firms in the Los Angeles market."); Litt Decl. ¶¶ 23-24.

[12] For evidence of the reasonableness of this rate, see Litt Decl. ¶ 23-24; Richardson Decl. ¶ 5 (senior paralegals at Hadsell & Stormer billed at a rate of $175 per hour); Thorland Decl. ¶ 12 (senior litigation paralegals at Loeb billed at $265 to $290 per hour); Eliasberg Decl ¶ 16 (In 2008, Ninth Circuit holds that rate of $175 per hour for a senior paralegal is reasonable).

[13] For evidence of the reasonableness of this rate, see Litt Decl. ¶ 20; Richardson Decl. ¶ 5 (senior paralegals at Hadsell & Stormer billed at a rate of $175 per hour); Thorland Decl. ¶ 11 (senior litigation paralegals at Loeb billed at $265 to $290 per hour); Eliasberg Decl ¶ 14 (In 2008, Ninth Circuit holds that rate of $175 per hour for a senior paralegal is reasonable).

|                | | **Total After** | $209,221.83 |
|                | | **5% Reduction** | |

### Hadsell Stormer Keeny Richardson & Rennick

| Name | Year of Law School Graduation | Rate | Hours | Total |
|------|-------------------------------|------|-------|-------|
| Anne Richardson | 1989 | $575[14] | 69.40 | $39,905 |
| Sanjukta Paul | 2003 | $350[15] | 77.80 | $27,230 |
| | | | **Total** | $67,135 |
| | | | **Total After 5% Reduction** | $63,788.25 |

---

[14] The rate being sought by Ms. Richardson is the rate she would ordinarily charge a billing client, which is presumptively a reasonable rates. Richardson Decl. ¶ 5; *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993)(lawyer's customary billing rate is presumptively reasonable for purposes of fee-shifting statutes).   For additional evidence of the reasonableness of this rate, see Litt Decl. ¶ 21, 23-24 (Kirkland & Ellis charged $625 per hour for a 1991 law school graduate in 2007); Thorland Decl. ¶ 7 (attorney at Loeb who graduated from law school in 1989 would be billed at a rate of $600 to $650 per hour).

[15] The rate being sought by Ms. Paul is the rate she would ordinarily charge a billing client, which is presumptively a reasonable rates. Richardson Decl. ¶ 5; *Gusman,* 986 F.2d at 1150 (lawyer's customary billing rate is presumptively reasonable for purposes of fee-shifting statutes).   For additional evidence of the reasonableness of this rate, *see* Thorland Decl. ¶ 8 (attorney at Loeb who graduated from law school in 2003 would be billed at a rate of $450 per hour); Eliasberg Decl. ¶ 14 (In 2008, Ninth Circuit holds that rate of $350 per hour for lawyer who graduated from law school in 2002 was reasonable).

1    **E.      Plaintiffs Are Entitled to Their Reasonable Out-Of-Pocket Expenses**

2          "Under § 1988, the prevailing party may recover as part of the award of attorney's

3    fees those out-of-pocket expenses that would normally be charged to a fee paying

4    client."  *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).   Among the expenses allowed

5    under the rubric of § 1988 fees in *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994),

6    were expenses "for the following: service of summons and complaint, service of trial

7    subpoenas, fee for defense expert at deposition, postage, investigator, copying costs,

8    hotel bills, meals, messenger service and employer record production."  *See also*

9    *International Woodworkers of America, AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d

10   762, 767 (9th Cir. 1986) ("telephone calls, postage, air courier and attorney travel

11   expenses").

12         The same is true under California fee-shifting statutes: fees include all reasonable

13   costs.  *Beasley*, 235 Cal.App.3d at 1419, overruled in part re expert witness fees as costs,

14   *Olson v. Automobile Club of So. Calif*, 42 Cal.4th 1142 (2008).

15         All of the expenses for which payment is sought here are expenses that would

16   normally be charged to a fee paying client.  *See* Eliasberg Decl. ¶ and Ex. 3  These

17   expenses are fully recoverable here.

18   \ \ \

19   \ \ \

20   \ \ \

21   \ \ \

22   \ \ \

23   \ \ \

24   \ \ \

25   \ \ \

26   \ \ \

27   \ \ \

28

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that their motion for attorneys fees be granted and that the Court award $375,938.75, plus $1,546.14 in out of pocket costs, plus the amount set forth in their upcoming reply brief to cover the reasonable fees necessary to finalize this motion and the reply brief

RESPECTFULLY SUBMITTED,

ACLU FOUNDATION OF
SOUTHERN CALIFORNIA

LAW OFFICES OF CAROL SOBEL


_____
/S/
MARK ROSENBAUM
Attorney for Plaintiffs