1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   DONALD FITZGERALD, DELBERT      )  Case No. CV 03-01876 DDP (RZx)
     EUGENE HUDSON, DILWORTH         )
12   MENEFELE and MARIO             )
     YOUNGBLOOD, as individual       )  **ORDER GRANTING MOTION FOR**
13   plaintiffs and as               )  **ATTORNEYS' FEES**
     representatives of the          )
14   classes,                        )  [Motion filed on March 6, 2009]
                                      )
15                   Plaintiffs,     )
                                      )
16        v.                         )
                                      )
17   CITY OF LOS ANGELES, CHIEF      )
     OF POLICE WILLIAM BRATTON       )
18   and CAPTAIN CHARLIE BECK, in    )
     their individual and           )
19   official capacities, and        )
     DOES 1-10, in their            )
20   individual and official         )
     capacities,                     )
21                                   )
                     Defendants.     )
22   _____)

23        This matter comes before the Court on Plaintiffs' Motion for

24   Attorneys' Fees.  Plaintiffs seek attorneys' fees for time spent on

25   their motion to extend the injunction issued in this case and for

26   time spent between the extension of the injunction and the entry of

27   the enforceable settlement agreement on February 17, 2009.

28   Defendant City argues that Plaintiffs have waived any claim to

attorneys' fees for this work, that Plaintiffs do not meet the standard for attorneys' fees, and that their fee requests are unreasonable.  After reviewing the materials submitted by the parties and hearing oral argument, the Court grants Plaintiffs' motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, who are persons living in the area of Los Angeles commonly known as "Skid Row," filed their Complaint on March 10, 2003.  Plaintiffs filed their suit pursuant to 42 U.S.C. § 1983, alleging that a Los Angeles Police Department search and seizure policy violated the Fourth Amendment and seeking injunctive and declaratory relief.  This case was assigned to the Honorable Nora Manella.  On March 31, 2003, the Court granted a temporary restraining order.  The Court granted a preliminary injunction on April 14, 2003.

**A.   The Settlement Agreement**

On December 8, 2003, the Court approved a settlement between the parties.  The Settlement Agreement stated the parties' "desire to resolve this matter without further litigation" and that they "therefore intend with this Settlement Agreement to resolve all issues pertaining to case number CV03-1876 upon the terms and conditions set forth in this Agreement."  Def. Ex. 7 at ¶ E.  The Settlement Agreement provided for a stipulated three-year permanent injunction.  Id. at §§ I-II.  The permanent injunction enjoined the City of Los Angeles as follows: (1) officers were prohibited from conducting detentions or "Terry" stops without reasonable suspicion that the person is involved in criminal activity or has committed a crime or violated parole or probation, but were not prohibited from

2

engaging in consensual encounters; (2) officers would not search the persons/possessions of those stopped on the public streets and sidewalks of the Skid Row area without probable cause or reasonable suspicion that the person has committed a crime or violated parole or probation, though officers were not prohibited from performing "pat-down" searches in accordance with law; and (3) officers would not search the residences of those on Skid Row except in certain circumstances.  The Settlement Agreement provided that the plaintiffs could move for an extension of the injunction for a period of up to 36 months.  Id. at § II.

The Settlement Agreement further provided for a payment to plaintiffs and attorneys fees and costs.  Specifically, section IV of the Settlement Agreement, titled "Attorney's Fees and Costs" provided:

> Within 60 days after this Agreement is executed by all parties, Defendants City of Los Angeles will pay plaintiffs the amount of $75,000 and plaintiffs' attorneys fees and cost [sic] in the amount of $94,720.  Plaintiffs accept this amount as full payment for any all monetary amounts owed in connection with Case Number CV03-1876, and, on behalf of themselves, hereby release all defendants, as well as all other employees and entities of the City of Los Angeles, from any further obligations to pay any further amounts.

Id. at § IV.  Section V, titled "Release of Defendants," stated: "Except as provided for in this Agreement, plaintiffs hereby release Defendants . . . from any an all obligations and liabilities in connection with the injunctive relief claims in case number CV03-1876 and the allegations made therein."

3

On the same day, Judge Manella also granted plaintiffs' application for attorneys' fees. Plaintiffs requested $94,720 in fees and costs, and presented documentation showing that this number reflected billable hours up to that point. See Order Granting Plaintiffs' Application for Attorneys' Fees, at 4-5 (Docket No. 42) (December 8, 2003). Overall, the Court granted $93,091 in attorneys' fees and $1,258.19 for costs, for a total of $94,393.19. Id. at 6.

**B.   Extension of the Injunction**

Plaintiffs filed a motion to extend the original injunction on December 8, 2006. The Court extended the injunction until it could decide the motion. On April 20, 2007, the Court granted the motion to extend the injunction for a period of four months (120 days) from the issuance of the order because "even viewing the evidence in the light most favorable to Defendants, they have admitted to an unconstitutional policy." See Order Granting Motion to Extend Injunction (Docket No. 64) (April 20, 2007) at 32-33. The Court posited that the four-month period "should provide the LAPD with ample time to review its policies and practices to ensure that they comply with current Fourth Amendment law." Id. at 32.

On July 11, 2007, Defendants filed a motion to vacate the injunction. This motion was noticed for hearing on August 6, 2007. Plaintiffs opposed the motion on the grounds that Defendants were still not abiding by the terms of the injunction and had not satisfied the legal standard for vacating it. On August 20, 2007, Plaintiffs filed a second motion to extend the injunction, alleging that Defendants were continuing to violate its terms. Prior to the hearing on the motion, the parties initiated settlement

negotiations.  These negotiations eventually resulted in the parties' reaching a settlement agreement, which the Court signed on February 17, 2009.  See Docket Entry Nos. 113 (February 3, 2009) and 117 (February 17, 2009).  The agreement provides that (1) searches incident to arrest are not permissible when a person is cited for an infraction or misdemeanor and released, (2) that the police may not compel persons to answer whether they are on probation or parole, and (3) that the time for a warrant check may not exceed the time reasonably required for an officer to complete his or her other duties.  Settlement and Order (Docket Entry No. 117), at ¶¶ 6, 13, 17.[1]  The February 17, 2009 Settlement and Order noted the parties' disagreement over the issue of attorneys' fees. Id. at ¶ 21.

Plaintiffs filed this Motion on March 6, 2009.  Plaintiffs seek attorneys' fees incurred (1) in litigating the motion to extend the injunction in 2006 and 2007 and (2) for time spent between the extension of the injunction and the entry of the enforceable settlement agreement on February 17, 2009.

---

[1]On February 17, 2009, the Court also granted Plaintiffs' request to substitute an attorney, filed on February 3, 2009.  In particular, Plaintiffs sought to substitute the ACLU of Southern California and the Law Offices of Carol Sobel as attorneys of record for plaintiffs in place of Hadsell Stormer Keeny Richardson & Renick LLP ("Hadsell Stormer").  Plaintiffs explained that one of Hadsell Stormer's associates, who did no work on this case, married one of the Court's law clerks in August 2008.  Defendants did not oppose Plaintiff's request.
Plaintiffs are seeking attorneys' fees for Hadsell Stormer through this motion.  Although the subject associate has not worked on this case, Hadsell Stormer is not seeking fees for any time after July 2008.  Richardson Decl., ¶ 23.  The Court also notes that the subject law clerk, who started his term in September 2008, is not assigned this case.  Additionally, the Court notes that it has an extern who formerly worked for Hadsell Stormer.  That extern has assured the Court that she did not work on this case.

1   **II.   LEGAL STANDARD**

2        Pursuant to 42 U.S.C. § 1988, a district court in its

3   discretion may award a reasonable attorney's fee to the prevailing

4   party in § 1983 litigation.  42 U.S.C. § 1988(b).  Under § 1988, "a

5   prevailing plaintiff should ordinarily recover an attorney's fee

6   unless special circumstances would render such an award unjust."

7   Hensley v. Eckerhart, 461 U.S. 424, 4429 (1983) (internal quotation

8   marks omitted).  A plaintiff "prevails" when there is a material

9   alteration of the legal relationship between the parties that

10  modifies the defendant's behavior in a way that directly benefits

11  the plaintiff.  See Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).

12  Settlement agreements enforced through consent decrees can form the

13  basis of an attorneys' fee award.  Buckhannon Bd. & Care Home v. W.

14  Va. Dep't of Health & Human Resources, 532 U.S. 598, 603-04 (2001);

15  Maher v. Gagne, 448 U.S. 122, 129 (1980).  Additionally, a district

16  court has the discretion to award fees to a prevailing party in

17  consent decree litigation for work reasonably spent to monitor and

18  enforce compliance with the decree.  Keith v. Volpe, 833 F.2d 850,

19  855-57 (9th Cir. 1987); N.A.A.C.P. v. San Francisco Unified Sch.

20  Dist., 284 F.3d 1163, 1166 (9th Cir. 2002) (citing Volpe and noting

21  that this principle is "settled law" in the Ninth Circuit).

22  Attorneys' fees may be waived as part of the settlement process.

23  Evans v. Jeff D., 475 U.S. 717, 737-38 (1986).

24       California law also provides a basis for attorneys' fees in

25  some actions.[2]  Pursuant to California Code of Civil Procedure

26

27       [2]The Complaint in this matter also had a claim under
    California Civil Code § 52.1.  "[W]hen state statutes authorize fee
28  awards to litigants in a particular class of cases, the statutes
                                                    (continued...)

§ 1021.5, "a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest," where certain requirements are met. Cal. Civ. Proc. Code § 1025.1. Attorneys' fees will be appropriate if (a) a significant benefit has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement make the award appropriate, and (c) such fees are not paid out of the recovery. Id. Although the section "is phrased in permissive terms . . ., the discretion to deny fees to a party that meets its terms is quite limited," and generally requires a full fee award unless special circumstances would render such an award unjust. Lyons v. Chinese Hospital Ass'n, 136 Cal. App. 4th 1331, 1344 (2006).

Where a plaintiff is entitled to attorneys' fees, a district court must determine the amount of a reasonable fee. The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. The Court should exclude from the initial fee calculation hours that were not reasonably expended. Id. at 434. There is a strong presumption that the lodestar figure represents a reasonable fee. Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987). After calculating the "lodestar," other considerations "may lead the

---

[2](...continued)
are substantive for Erie[v. Tompkins, 304 U.S. 64 (1938)] purposes if there is no 'direct collision' with the Federal Rules." CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1111 (9th Cir. 2007); see In re Larry's Apartment, L.L.C., 249 f.3d 832, 837-38 (9th Cir. 2001).

1  district court to adjust the fee upward or downward." <u>Id.</u>  Among

2  those other considerations is "the important factor of the 'results

3  obtained.'" <u>Id.</u>; <u>see also</u> <u>id.</u> at n.9 (suggesting that the factors

4  identified in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.3d

5  714, 717-19 (5th Cir. 1974), may be particularly helpful, but also

6  noting that "many of these factors usually are subsumed within the

7  initial calculation of hours reasonably expended at a reasonable

8  hourly rate").

9  **III. DISCUSSION**

10     Defendant City of Los Angeles ("City" or "Defendant") argues

11  that Plaintiffs are not entitled to the fees they request.  First,

12  and primarily, Defendant argues that Plaintiffs are entitled to no

13  fees because the 2003 Settlement Agreement waived any rights to

14  attorneys' fees for work performed in the future.  Second, in the

15  alternative, Defendant attacks the fees Plaintiffs request and asks

16  the Court to award less.

17     **A.   Waiver**

18     As a threshold matter, Defendant argues that Plaintiffs waived

19  their right to attorneys' fees through the December 2003 Settlement

20  Agreement.[3]  As mentioned above, the general rule is that a

21  prevailing party in a civil rights action – including one concluded

22  through settlement – is entitled to attorneys' fees.  Where parties

23  in a civil rights action resolve the action by settlement, the

24  availability of attorneys' fees for successful plaintiffs may be

25  waived as part of the settlement process.  <u>Evans v. Jeff D.</u>, 475

26  _____

27     [3]City does not appear to distinguish between the extension of
   the injunction in April 2007 and the second settlement entered in
28  February 2009.  Rather, City refers to these efforts collectively.

U.S. 717, 737-38 (1986).  In the Ninth Circuit, however, a waiver
of attorneys' fees must be clear: "a prevailing plaintiff may sue
for reasonable attorneys' fees unless the defendant shows that the
plaintiff clearly waived fees as part of the settlement."
Muckleshoot Tribe v. Puget Sound Power & Light Co., 875 F.2d 695,
697 (9th Cir. 1989); see Wakefield v. Mathews, 852 F.2d 482 (9th
Cir. 1988).  A defendant may demonstrate a waiver of attorneys'
fees in two ways.  The basic rule is that the court focuses on "the
language in the settlement agreement." Id. at 698.  "[A] waiver of
attorneys' fees may be established by clear language in the
release," either because it "contains an explicit reference to
fees" or because "the breadth of the release is so 'sweeping' that
it necessarily includes attorneys' fees." Id.  Alternatively, "if
the language in the release is unclear or ambiguous, surrounding
circumstances may clearly manifest the intent of the parties that
attorneys' fees be waived." Id.  Generally, "waiver of attorneys'
fees should not be presumed from a silent record." Wakefield, 852
F.2d at 484.  Ultimately, "any waiver or limitation of attorney
fees in settlements of [civil rights] cases must be clear and
unambiguous." Holland v. Roeser, 37 F.3d 501, 503-04 (9th Cir.
1994).[4]

-----

[4]In Wakefield, the Ninth Circuit held that the release at
issue was so sweeping as to cover attorneys' fees, even though it
did not provide those fees by name.  That release provided that it
applied to
     any and all manner of action or actions, causes or causes of
     action, in law or in equity, suit, debts, liens, contracts,
     agreements, promises, liabilities, claims, rights,
     obligations, demands, damages, including punitive damages,
     injuries, debts, losses, costs or expenses of any nature
     whatsoever, known or unknown, fixed or contingent ..., which
     [plaintiffs] now [have] or may hereafter have against each or
                                              (continued...)

9

1    The Court begins with an analysis of whether the language in
2    the agreement clearly waives attorneys' fees for work performed in
3    connection with the extension of the injunction.  The critical
4    section is subsection IV.  Titled "Attorney's Fees and Costs," the
5    section provides the following payment: (1) a payment to plaintiffs
6    in the amount of $75,000 and (2) attorneys' fees and costs in the
7    amount of $94,720.  The section then contains language releasing
8    the defendant as follows: "Plaintiffs accept this amount as *full*
9    *payment for any and all monetary amounts owed in connection with*
10   *Case Number CV03-1876, and . . . release all defendants . . . from*
11   *any further obligations to pay any further amounts.*"  Def. Ex. 7 at
12   § IV (emphasis added).  The parties focus on different portions of
13   this section.  Plaintiffs emphasize the past-tense nature of the
14   word "owed," and distinguish that language from the language used
15   in <u>Wakefield</u>, which more expressly contemplated sums for a future
16   amount.  Defendant argues that the section also contemplates future
17   obligations, through its release of defendants from "any further
18   obligations to pay any further amounts."  Plaintiffs argue that the
19   better way of reading the agreement is that "the scope of the
20   release is . . . simply coextensive with the scope of the payment.
21   In other words, in exchange for the payments of $75,000 and
22   $94,720, Plaintiffs were only agreeing to release defendants from
23   their obligations to pay any more for harms already suffered and
24   attorneys work already performed."  Reply at 1:24-28.

25
26       [4](...continued)
27       any of the [defendants] arising out of, or what might be
         considered to arise out of or in any way connected with the
28       aforementioned lawsuit or the conduct of [defendants] to date.
    852 F.2d at 483.

1    The Court agrees with Plaintiffs.  Although the term "further"
2  could take on the meaning Defendants suggest, it does not clearly
3  do so.  Section IV does *not* say, for example, that Plaintiffs
4  accept the amount as full payment for all monetary amounts owed,
5  now or in the future.  See <u>Wakefield</u>, 852 F.2d at 483 (waiving
6  claims which plaintiffs now have or may hereafter have against the
7  defendants).  The only indication that future liabilities or fees
8  *might* be covered is the use of the word "further."  In context,
9  however, the use of that term is not clear.  It could mean that the
10 plaintiffs would not later claim they were owed something for which
11 they were not compensated – either damages or attorneys' fees – in
12 December 2003 (i.e., Defendants owe nothing further as of December
13 2003).  Or it could mean that the amount was meant to cover all
14 future work by the plaintiffs in, for example, extending and
15 enforcing the injunction (i.e., Defendants will owe nothing for any
16 further work performed on the case).

17    Other provisions in the Settlement Agreement do not clarify
18 this issue.  Defendant argues that additional language supports its
19 reading.  In particular, Defendant argues that other provisions
20 show that the City of Los Angeles paid attorneys' fees in part as
21 consideration for the waiver of additional attorneys' fees and
22 costs in the event Plaintiffs sought to extend the injunction in
23 the future.  Defendant points to the integrative language in the
24 agreement, i.e., paragraph 3 of the "Background", which suggests
25 that the agreement was intended to resolve "all issues pertaining
26 to case number CV03-1876 upon the terms and conditions set forth in
27 this Agreement."  Additionally, Defendant emphasizes that the
28 Agreement expressly contemplated a motion to extend.  Taking these

different parts of the agreement together, Defendant argues, attorneys' fees in conjunction with a motion to extend must have been covered.  The Court is not persuaded by this reading.  The fact that the parties specifically contemplated a motion to extend and yet did not expressly include language that stated an intent for the settlement amount to cover fees not yet incurred or fees in connection with the motion to extend – but instead only included the ambiguous term "further" – mitigates the force of Defendants' argument.  Cf. Wakefield, 852 F.2d at 484 ("[W]aiver of attorneys' fees should not be presumed from a silent record.").

Defendant's reliance on section V is likewise unavailing. Defendant argues that section V serves to emphasize the breadth of Plaintiffs' waiver.  The Court finds Plaintiffs' reading of section V more plausible: while section IV talks about payment in connection with the case, section V specifically mentions injunctive claims in connection with the case.  The Court is hesitant to read the terms "obligations and liabilities" to include attorneys' fees.  While Defendants correctly note that the Wakefield release deemed sweeping enough to waive attorneys' fees did include the terms "obligations" and "liabilities," it also included the terms "costs or expenses of any nature whatsoever." See Wakefield, 852 F.2d at 483.  Courts have tended to consider attorneys' fees to be *costs*, not *liabilities* in this context.  See, e.g., 42 U.S.C. § 1988(b) (attorneys fees will be included as costs); Parker v. Metropolitan Water Reclamation Dist. of Greater Chicago, 782 F. Supp. 387 (N.D. Ill. 1992) ("liability, claims, and demands" is not broad enough to include attorneys' fees where release failed to mention the term or even costs).

1    While the Court finds Defendant's reading of the agreement to
2  be reasonable, the Court cannot find that the language of the
3  agreement betrays a clear waiver or a waiver so sweeping as to
4  necessarily encompass attorneys' fees.  See Muckleshoot Tribe, 875
5  F.2d at 698.  Rather, the structure of section IV and the use of
6  "further" instead of "future," "not yet incurred," or something
7  that clearly indicated these fees were not yet "owed" suggest that
8  the payment of attorneys' fees was only for the liabilities
9  incurred up to that point.  Accordingly, the Court finds that the
10 language is ambiguous.

11    Ambiguous language is not necessarily the end of a waiver
12 story in all cases, but it is here.  As the Ninth Circuit explained
13 in Muckleshoot Tribe, where "the language in the release is unclear
14 or ambiguous, surrounding circumstances may clearly manifest the
15 intent of the parties that attorneys' fees be waived."  875 F.2d at
16 698.  Although Defendant has made reasonable arguments as to its
17 intent – i.e., that the payment of attorneys' fees was in part
18 consideration for the option to extend – Defendant has presented no
19 evidence of the surrounding circumstances that would indicate such
20 an approach was in fact the intent or understanding of the
21 parties.[5]  Plaintiffs, who do not have the burden to show waiver,
22 have highlighted why Defendant's proffered mutual intent would not

23

24    [5]For example, City has presented no evidence (or argument
   devoid of evidence) that would suggest the amount of fees in the
   Settlement Agreement – nearly $95,000 – would have been an
25 unreasonable estimate of fees and costs for only the work performed
   up to December 2003.  If it had, such evidence might support City's
26 argument that the amount paid included the possibility of
   additional legal work.  In fact, Judge Manella's December 8, 2003
27 order granting the application for attorneys' fees shows that
   nearly $94,000 of this amount was for actual hours billed and costs
28 incurred.

make sense: it seems less likely that Plaintiffs would waive any right to seek payment for future fees when (1) they do not know how the City would respond to the injunction once it is issued (and therefore how intense enforcement or a motion to extend would be), (2) they do know they would be entitled to attorneys' fees for monitoring and enforcing the injunction under <u>Volpe</u>, and (3) they are cognizant of the broad nature of the injunction (and, thus, the likelihood that it will need monitoring).

Because the language of the Settlement Agreement does not clearly waive the right to seek attorneys' fees for the motion to extend or for the work leading up to the 2009 Settlement and Order, and because the City has presented no evidence that its reading of the ambiguous language reflects the intent of the parties, City has not met its burden to show that Plaintiffs have "clearly waived" attorneys' fees in this matter.

**B.   Entitlement to Fees**

Plaintiffs seeks attorneys' fees for two general endeavors: the time they spent on the motion to extend the injunction and the work done between the Court's order extending the injunction and the entry of the judicially enforceable settlement agreement. Although Defendant argues that Plaintiffs do not seek reasonable fees, Defendant does not appear to argue that, even if Plaintiffs have not waived a claim to fees, they are entitled to no fees.

1.   <u>Motion to Extend Injunction</u>

Plaintiffs seek fees for time spent on the motion to extend the injunction, which the Court granted in April 2007.[6]  Plaintiffs

_____

[6]The standard for extending the injunction, "good cause," was
(continued...)

14

1  argue that the order extending the injunction, like the initial

2  order granting a permanent injunction, altered the legal

3  relationship between the parties.   Additionally, Plaintiffs argue

4  that they are entitled to fees for that time because it was time

5  spent to monitor and enforce compliance with the decree.   While

6  Defendant argues that Plaintiffs' fee award should be reduced

7  because of the hours claimed and the results reached, Defendant

8  does not appear to argue that Plaintiffs may not recover at all for

9  this work (except for the reasons discussed above).   The Court

10  finds that the successful motion to extend the injunction entitles

11  Plaintiffs to fees for the hours reasonably spent enforcing the

12  injunction.   See Volpe, 833 F.2d at 855-57.

13          2.   Time Between Extension of Injunction and Entry of

14             Enforceable Settlement Agreement

15      Plaintiffs also seek reasonable attorneys' fees for the time

16  spent between the entry of the Court's order extending the

17  injunction and the Settlement & Order that was approved by the

18  Court in February 2009.   Again, while Defendant contests the amount

19  of fees, Defendant does not contest entitlement to fees at all,

20  except through its "waiver" argument.   For the reasons stated in

21  Plaintiffs' Motion, see Pl.'s Mem. at 3:21-8:24, and in light of no

22  argument to the contrary (except for waiver), the Court also finds

23  that Plaintiffs are entitled to reasonable fees for this work under

24  federal and state law.

25  **C.   Amount of Fees**

26

27       [6](...continued)

28  "less than that needed for a permanent injunction."   Order Granting
Motion to Extend Injunction, at 7:23-27.

1    The Court next addresses the amount of a reasonable fee.  "In

2  determining a reasonable attorney's fee, the district court's first

3  step is to calculate a 'lodestar' by multiplying the number of

4  hours it finds the prevailing party reasonably expended on the

5  litigation by a reasonable hourly rate."  <u>McGrath v. County of</u>

6  <u>Nevada</u>, 67 F.3d 248, 252 (9th Cir. 1995).  In calculating the

7  lodestar, "the district court should take in to account the factors

8  set forth in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70

9  (9th Cir. 1975), . . . that it finds to be relevant." <u>McGrath</u>, 67

10  F.3d at 252.[7]  Once the court has calculated the lodestar, the

11  "second step . . . is to assess whether the presumptively

12  reasonable lodestar figure should be adjusted on the basis of <u>Kerr</u>

13  factors not already subsumed in the initial calculation."  <u>Id.</u>

14    "The fee applicant bears the burden of documenting the

15  appropriate hours expended in the litigation and must submit

16  evidence in support of these hours worked." <u>Gates v. Deukmejian</u>,

17  987 F.2d 1392, 1397 (9th Cir. 1992).  Once the fee applicant has

18  met that burden, the opposing party "has a burden of rebuttal that

19  requires submission of evidence to the district court challenging

20  the accuracy and reasonableness of the hours charged or the facts

21

22

23    [7]The <u>Kerr</u> factors include: (1) the time and labor required,
24  (2) the novelty and difficulty of the questions involved, (3) the
   skill requisite to perform the legal service properly, (4) the
25  preclusion of other employment by the attorney due to acceptance of
   the case, (5) the customary fee, (6) whether the fee is fixed or
26  contingent, (7) time limitations imposed by the client or the
   circumstances, (8) the amount involved and the results obtained,
27  (9) the experience, reputation, and ability of the attorneys, (10)
   the "undesirability" of the case, (11) the nature and length of the
28  professional relationship with the client, and (12) awards in
   similar cases.  526 F.2d at 70.

asserted by the prevailing party in its submitted affidavits." <u>Id.</u> at 1397-98.

           1. <u>Lodestar</u>

               a. Hours Reasonably Expended

The court must examine the amount of hours claimed by the moving party and "in order to award fees based on them, [must] find that the time actually spent was reasonably necessary." <u>Carson v. Billings Police Dep't</u>, 470 F.3d 889, 893 (9th Cir. 2006).

Plaintiffs seek compensation for a total of 862.50 hours expended on interviewing declarants, briefing for the first motion to extend the injunction and the reply, preparing for and doing oral argument, briefing the second motion to extend the injunction and reply, briefing the opposition to Defendants' motion to vacate the injunction, negotiating the settlement agreement entered in February 2009, and communicating with co-counsel. Those 862.50 hours reflect work by attorneys Mark Rosenbaum, Carol Sobel, Anne Richardson, Peter Bibring, Peter Eliasberg, and Sanjukta Paul; legal assistant Joyce Bradberg; and Teresa Virgen-Torres and law students who helped gather declarations in connection with the motions to extend and the motion to vacate.

In determining the amount of hours for which compensation is sought, Plaintiffs exercised billing judgment. <u>See</u> <u>Hensley</u>, 461 U.S. 434. The ACLU is not seeking compensation for more than 72 hours spent on the matter up to the Court's extension of the injunction or for an additional approximately 50 hours spent on the matter between the time of the Court's extension of the injunction and the entry of the settlement agreement. <u>See</u> Eliasberg Decl. ¶¶ 14-15. In addition to reducing the hours of certain

17

1   individuals, the ACLU is not seeking compensation for anyone who

2   billed less than 10 hours on the matter. Id. at ¶ 15. Ms. Sobel

3   reduced the time spent on briefing and research by a total of 44

4   hours. Hadsell Stormer is not seeking compensation for about 8% of

5   the firm's total billing. Finally, Plaintiffs have taken the total

6   amount after the exercise of billing judgment and reduced it by an

7   additional 5% to ensure that no excessive or duplicative time is

8   being sought. Plaintiffs have submitted evidence as to the

9   calculation of billing rates and the hours actually expended.

10  See Eliasberg Decl.; Richardson Decl.; Sobel Decl.; Litt Decl;

11  Thorland Decl. This evidence is sufficient to meet their burden

12  "of documenting the appropriate hours expended in the litigation

13  and . . . submit[ting] evidence in support of these hours worked."

14  Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).

15      Defendant argues that the hours billed are unreasonable and

16  must be reduced in a number of ways. The Court finds that

17  reductions for duplication and the interviews and declarations are

18  appropriate.

19              i.   Block Billing

20      First, Defendant argues that Plaintiffs block-billed their

21  hours spent on litigation, and therefore that the Court should

22  reduce the amount by 25%. Block billing is "the time-keeping

23  method by which each lawyer and legal assistant enters the total

24  daily time spent working on a case, rather than itemizing the time

25  expended on specific tasks." Welch v. Metropolitan Life Ins. Co.,

26  480 F.3d 942, 945 n.2 (9th Cir. 2007). It can be appropriate to

27  take a reduction of 20% on hours due to block billing. Welch, 480

28  F.3d at 948. However, "the use of block billing does not justify

1   an across-the-board reduction or rejection of *all* hours," but only

2   those that are block-billed.  <u>Mendez v. County of San Bernardino</u>,

3   540 F.3d 1109, 1129 (9th Cir. 2008).

4       Defendant identifies 162.4 hours ($89,922.00) that are alleged

5   to be block-billed.  Knapton Decl. ¶ 24.  Plaintiffs argue that

6   many of the entries identified as block-billed actually list in

7   significant detail the tasks performed during those hours.

8   Plaintiffs emphasize that the important thing is that "sufficient

9   detail has been provided so that [the Court] can evaluate what the

10  lawyers were doing and the reasonableness of the number of hours

11  spent on those tasks."  <u>Smith v. District of Columbia</u>, 466 F. Supp.

12  2d 151, 158 (D.D.C. 2006).  The Court has reviewed the entries

13  identified as block-billed by Defendant's consultant.  <u>See</u> <u>Knapton</u>

14  <u>Decl.</u>, Ex. 3.  After this careful review, the Court concludes that

15  a reduction for block billing is not necessary.  All of the entries

16  are detailed enough for the Court to compare the hours expended

17  against the tasks and assess the reasonableness of those tasks.

18  Many of entries identified as block-billing are actually different

19  parts of the same task, and many of the entries identified as

20  block-billing identify a total of a few hours.

21                  ii.  Duplicative Internal Conferences and

22                       Multiple Attendance by Attorneys

23      Second, Defendant argues that Plaintiffs seek fees for 238.35

24  unnecessarily duplicative hours, totaling $106,240.50.  Knapton

25  Decl. ¶ 26 & Ex. 4.  "The court may reduce the number of hours

26  awarded because the lawyer performed unnecessarily duplicative

27  work."  <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir.

28  2008).  "[D]etermining whether work is inherently duplicative is no

easy task," because some duplication is "inherent in the process of
litigating over time." Id.   Concerns about overstaffing are a
relevant consideration, but determining whether there has been
unnecessary duplication requires the exercise of "judgment and
discretion, considering the circumstances of the individual case."
Democratic Party of Washington State v. Reed, 388 F.3d 1281, 1286-87
(9th Cir. 2004).

     Defendant argues that the hours identified are duplicative
because they begin when "it is clear that both sides wanted to
agree on a plan" and use multiple, very experienced litigators to
attend hearings and settlement conferences.   Plaintiffs note that
with respect to a number of identified entries, Defendant's expert
does not separate duplicative time from non-duplicative time within
an entry.   The Court does not find the presence of lawyers at court
meetings to be excessive or unnecessarily duplicative in this case:
Plaintiffs typically only seek fees for two or three lawyers at
those meetings, a number comparable to the lawyers present for the
City at such meetings.   Additionally, the Court finds that
Plaintiffs did not bill excessively for drafting or reviewing
documents.

     The Court does note, however, that there are a significant
number of very experienced civil rights litigators on this case,
which did not have especially complex legal issues.   The Court
notes that such experience may have been necessary in light of the
nature of this action, which involved the civil rights of thousands
of Skid Row residents as affected by a significant City of Los
Angeles initiative.   However, the Court expresses some concern,
looking at the hours billed, that the number of attorneys on this

1  case perhaps produced an excessive amount of conferencing.  To

2  compensate, the Court will cut 50% of the time billed for

3  conference calls and/or cross-firm team meetings.  According to the

4  Court's independent review of the records (including estimations

5  where necessary due to how hours were recorded), this will reduce

6  attorneys' hours in the following amounts: Rosenbaum by 2;

7  Eliasburg by 3.8; Bibring by 9.3; Sobel by 7.1; Richardson by 7.3;

8  Paul by 5.4.

9                    iii. Interviewing and Collecting Declarations

10      Defendant also argues that the time spent interviewing and

11  collecting declaration is excessive.  Defendant notes that

12  Plaintiffs request a total of 170.75 hours (fees of $55,607.50) for

13  interviewing and collecting approximately 40 declarations of Skid

14  Row residents.  <u>See</u> Knapton Decl. at ¶ 30.  Defendant compares the

15  time spent by City on declarations (about .3 hours per declaration)

16  to the time spent by Plaintiffs per declaration (about 4.37 hours).

17      The Court agrees that the time spent for collecting

18  declarations was excessive in this case.  While the Court does not

19  expect Plaintiffs to spend an equal amount of time to the City on

20  each declaration, the Court finds that an average of around four

21  hours per declaration is excessive under the circumstances, even

22  considering the time it might take to review those documents and

23  the burden plaintiffs may have had on the motion to extend the

24  injunction.[8]  Accordingly, the Court will reduce the time billed

25  _____

26      [8]For example, it seems less than efficient for an attorney
    billing at a rate of $740 per hour to spend seven hours - or almost
27  twenty percent of the attorney's time billed for this case - on
    this type of fact-gathering.  The Court recognizes the importance
28  of understanding the facts of one's case, but notes that, in
                                              (continued...)

for interviewing and taking declarations by two-thirds.  On the Court's review of the billing records,[9] this will reduce the respective hours by the following amounts: Rosenbaum by 4.7, Bibring by 17.5, Richardson by 1.6, Paul by 7, paralegals by 13.7, and law students by 27.7 hours.

iii. Reasonable Hours

The Court has also reviewed the remainder of the hours billed, as well as the Knapton Declaration, for reasonableness, and has found that the remaining hours, with the 5% across-the-board reduction to account for potential excessive time or duplication not already considered, are properly charged.[10]  Thus, in light of the adjustments above, the Court finds that the following hours (plus the 5% across-the-board reduction to account for potential excessive time) are reasonable:

| Name | Requested Hours | With Court's Reductions | With 5% Across-the-Board Reduction |
|------|------|------|------|
| Sobel | 175.7 | 168.6 | 160.17 |
| Rosenbaum | 40.1 | 33.4 | 31.73 |
| Eliasberg | 88.6 | 84.8 | 80.56 |

---

[8](...continued)
conjunction with the significant additional fact-gathering, this amount is excessive.

[9]Plaintiffs note that much of the time interveiwing and drafting declarations has been wrongly classified by Defendants' expert.  In calculating the reduction in time, the Court used only that billed time that was spent interviewing or preparing declarations.

[10]The Court has included the fees requested for the Reply into the requested hours, above.

| Bibring | 345.1 | 318.3 | 302.385 |
| Rastegar | 18.8 | 18.8 | 17.86 |
| Law students | 41.5 | 13.8 | 13.11 |
| Paralegals | 37.7 | 24.0 | 22.8 |
| Richardson | 69.4 | 60.5 | 57.475 |
| Paul | 77.8 | 65.4 | 62.13 |

b.    Reasonable Hourly Rate

Next, the Court addresses a reasonable hourly rate for each of the individuals for which Plaintiffs seek compensation.  For the purposes of attorneys' fee motions, courts look to the "prevailing market rate[] in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465 U.S. 886, 895-96 & n.11.  "[T]he relevant community is the forum in which the district court sits."  Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  The established standard for determining the reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  Id. at 502 (internal quotation marks omitted).  In determining an appropriate rate, a district court may make reference to the factors in Kerr, which "include the novelty and difficulty of the issues involved in a case, the skill required to litigate those issues, the preclusion of other employment, the customary fee, relevant time constraints, the amount at stake and the results obtained, the experience, reputation, and ability of the attorneys, the nature and length of their professional relationship with the client, the 'undesirability' of a case, and awards in similar suits."  Davis v.

23

City and County of S.F., 976 F.2d 1536, 1546 (9th Cir. 1992),

vacated in part on other grounds by 984 F.2d 945 (9th Cir. 1993).[11]

Plaintiffs seek to the following hourly rates for the lawyers in this case:

| Name | J.D. | Requested Rate |
|------|------|----------------|
| Sobel | 1978 | $710 |
| Rosenbaum | 1974 | $740 |
| Eliasberg | 1994 | $525 |
| Bibring | 2002 | $375 |
| Rastegar | 2007 | $240 |
| Richardson | 1989 | $575 |
| Paul | 2003 | $350 |

Additionally, Plaintiffs seek fees for the work of law students in the amount of $200 per hour, and for paralegals at the rate of $175 per hour.

Plaintiffs have presented evidence in support of each of these rates. See Eliasberg Decl. (discussing experience of ACLU personnel); Sobel Decl. (discussing rates awarded in other cases); Litt Decl. (discussing rates granted in other cases and civil rights litigation in Southern California); Richardson Decl. (discussing rates for Hadsell Stormer personnel); Thorland Decl. (discussing rates for attorneys at Loeb & Loeb in Los Angeles).[12] In response, Defendants' expert has discussed the Laffey Matrix, a publication based on District of Columbia averages that can be

---

[11]Determining a prevailing market rate can be especially difficult in situations where an attorney takes cases on a contingency or nonprofit basis.

[12]The Court is satisfied with the rate sought for Ms. Virgen Torres, which is equivalent to that of a paralegal. See Reply at 5; Lhamon Decl.; Torres Decl.

adjusted for different regions.  Defendants have not otherwise
presented argument or evidence as to reasonable market rates in the
field.  In particular, with the exception of offering the <u>Laffey</u>
Matrix as an alternative, Defendants have not explained why
Plaintiffs rates are not within the reasonable range of rates.
While Knapton suggests that rates for commercial law firms are not
completely helpful, he does not undercut the testimony from
Richardson as to the rates charged by Hadsell Stormer lawyers or
the declarations from others who have testified to the rates at
which they were awarded fees in previous years.  The Court is not
persuaded that the <u>Laffey</u> Matrix, even adjusted for Los Angeles, is
more helpful than the rates actually used by other courts or the
rates of law firms.  The Court recognizes that many of the
attorneys in this case are experienced, renowned civil rights
litigators.  Defendants have not explained why the rates suggested
by Plaintiffs are not reasonable.

After a review of the evidence presented by the parties in
support of fees, the Court finds that these requested rates are
reasonable for each of the attorneys and paralegals.

c.   Lodestar

Based on the hours and rates presented above, the lodestar
amount is as follows.

| Name | Firm | Hours | Rate | Lodestar |
|------|------|-------|------|----------|
| Sobel | Law Office of Carol Sobel | 160.17 | $710 | $113,720.70 |
| Rosenbaum | ACLU | 31.73 | $740 | $23,480.20 |
| Eliasberg | ACLU | 80.56 | $525 | $42,294.00 |

| Bibring | ACLU | 302.385 | $375 | $113,394.37 |
|---------|------|---------|------|-------------|
| Rastegar | ACLU | 17.86 | $240 | $4,286.40 |
| Law students | ACLU | 13.11 | $200 | $2,622.00 |
| Paralegals | ACLU | 22.8 | $175 | $3,990.00 |
| Richardson | HS/HSKRR | 57.475 | $575 | $33,048.12 |
| Paul | HS/HSKRR | 62.13 | $350 | $21,745.50 |
| | | | | |
| | | | **Total** | $358,581.29 |

### 2. Adjustment of Lodestar

While the lodestar figure presumptively represents a reasonable amount of attorneys' fees, "other considerations . . . may lead the district court to adjust the fee upward or downward." Hensley, 461 U.S. at 433; see McGrath, 67 F.3d at 252. The Supreme Court has highlighted the "results obtained" as a particularly important factor in determining whether the fees should be adjusted. Hensley, 461 U.S. at 433. Hensley noted that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," while the lodestar figure may be excessive for a plaintiff who "has achieved only partial or limited success." Id. at 435-36.[13]

City argues that the lodestar figure should be reduced because the results obtained were not "excellent." In particular, City

---

[13]Plaintiffs argue that an analysis of their results is irrelevant because they are entitled to fees for hours "reasonably spent" for monitoring and enforcing the a consent decree, "even as to matters in which [they] did not prevail" under N.A.A.C.P. v. San Francisco Unified School District. The Court does not read this quote as holding inapplicable the normal, two-step fee-assessment approach. Rather, the Volpe and N.A.A.C.P courts addressed whether the normal § 1988 fee calculations apply at all to time spent monitoring a consent decree. See Volpe, 833 F.2d at 855-57, 859.

notes that the extension of the injunction did not require
especially difficult legal issues or complicated facts, and that
the injunctions essentially adopted the legal standard.  Moreover,
City notes that Plaintiffs did not meet the normal permanent
injunction standard, but rather were only required to institute
"good cause," which the Court interpreted as akin to a summary
judgment standard.  Plaintiffs emphasize that they succeeded in
securing exactly what they sought: an extension of the injunction
in April 2007 and a new injunction and order.

The Court imposes a downward adjustment of 10% here.  The
Court finds that the ten percent downward adjustment properly
reflects the significant success on important issues that
Plaintiffs had in this litigation and respects the presumptive
reasonableness of the lodestar calculation, while also recognizing
that Plaintiffs did not prevail on every point, either in the
motion to extend or the final settlement.  While important, the
legal and factual issues presented in the motions to extend the
injunction were akin to prior arguments before the Court.
Additionally, the Court did not extend the injunction on the
theories set forth by the Plaintiffs, and did so for a limited
time.  The February 2009 Settlement and Order represents at least
some compromise in Plaintiffs' position (of course, it also
represents some compromise in City's position).  At the same time,
although Plaintiffs did not need to meet the normal permanent
injunction standard, they largely succeeded in what they sought,
i.e., an extension of the injunction, over opposition by Defendant.
Additionally, the February 2009 Settlement and Order included a
number of different terms than the 2003 injunction, and specified

that certain practices defendants had defended as lawful activity are enjoined.  E.q., Settlement & Order (February 17, 2009), at ¶¶ 6-8; Def.'s Opp. to Second Mot. to Extend Injunction at 14-15. Accordingly, the Court finds that the reasonable attorneys' fees in this case are $ 322,723.16.

### D.   Costs

Pursuant to Plaintiffs' request, the Court grants costs in the amount of $1,546.14.  See Eliasberg Decl. at ¶ 17 & Ex. 2.

### IV.   CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' Motion for Attorneys' Fees and awards Plaintiffs $322,723.16 in attorneys' fees and $1,546.14 in costs.

IT IS SO ORDERED.

Dated: April 7, 2009

DEAN D. PREGERSON
United States District Judge